26 July 1, 2026 No. 591

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HERBERT JAMES RABAGO,
*Defendant-Appellant.*

Washington County Circuit Court
21CR10111, 21CR11204; A182381 (Control), A181938

Andrew Erwin, Judge.

Submitted July 30, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Daniel C. Bennett, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Daniel Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

SHORR, P. J.

In Case No. 21CR10111, reversed and remanded. In Case No. 21CR11204, remanded for resentencing; otherwise affirmed.

**SHORR, P. J.**

In this consolidated criminal appeal, defendant appeals from a judgment of conviction in Case No. 21CR10111 for second-degree murder with a firearm, ORS 163.115(1) (Count 1), unlawful use of a weapon with a firearm, ORS 166.220 (Count 2), and felon in possession with a firearm, ORS 166.270(1) (Count 3). In Case No. 21CR11204, the trial court accepted defendant's guilty pleas to four of the charges against him and dismissed the fifth charge; defendant does not challenge on appeal the judgment in that case. Defendant raises five assignments of error related to Case No. 21CR10111. Defendant's first assignment of error argues that the trial court plainly erred in failing to reread critical jury instructions at the end of trial. As explained below, we agree with defendant that the trial court plainly erred in that respect.[1] Accordingly, we reverse and remand in Case No. 21CR10111, and we remand for resentencing in Case No. 21CR11204.

The charges in Case No. 21CR10111 arose out of a confrontation between defendant, who was Rucker's ex-boyfriend and the father of one of her children, and Rucker's friend, J, that resulted in J's shooting and death. A couple of weeks after the shooting, the police arrested defendant pursuant to an arrest warrant for J's homicide. Rucker testified at trial that defendant first pulled a gun on J at her home, and later shot at J while he was driving in his car. Rucker drove J to the nearest medical facility, where he died of his injuries. The jury found defendant guilty of all charges.

Defendant's first assignment of error challenges the trial court's failure to read aloud all of the jury instructions at the end of trial. At the beginning of trial, after the jury

---

[1] That conclusion obviates the need to address defendant's second, third, and fifth assignments, which argue that the trial court erred in making an improper comment on the evidence, failing to give the witness-false-in-part instruction, and imposing the mandatory gun minimum on Count 2 instead of Count 1. *See State v. Estrada-Robles*, 312 Or App 357, 358, 492 P3d 731 (2021) (reversing and declining to address the remaining assignments where the record "may well develop differently on remand"). However, because the issue will arise again on remand, we address defendant's fourth assignment of error challenging the trial court's denial of his motion to suppress evidence.

was sworn in, the trial court provided the jury with written preliminary instructions, which it also read aloud to the jury. Those instructions included standard instructions on the presumption of innocence, the state's burden of proof beyond a reasonable doubt, defendant's constitutional right to not testify, evaluating defendant's statements, evaluating witness testimony, inferences, direct and circumstantial evidence, and the definitions of "knowingly" and "with knowledge." After the close of evidence eight days later and before closing arguments, the trial court informed both parties that it would provide the jury with the complete written instructions, that it did not intend to reread pages one through six, and that counsel could read any instructions to the jury during closing arguments. Defense counsel responded, "That's what we will do." The trial court then gave the jury final instructions, and began by informing the jury that it would not reread the instructions on pages one through six that it had read at the beginning of the trial, but would provide the "complete set, pages 1-11," in written form. The court then read aloud the remaining jury instructions, which primarily consisted of certain definitions and the elements of the criminal offenses.

On appeal, defendant assigns error to the trial court's failure to reread aloud the instructions on the presumption of innocence and proof beyond a reasonable doubt, defendant not testifying, defendant's statements, evaluating witness testimony, inferences, direct and circumstantial evidence, and the definitions of "knowingly" and "with knowledge." Because defendant did not object to the trial court's procedure, he requests us to review for plain error.

An error is "plain" when it is one of law, obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If a plain error occurred, we next consider whether it was harmless, and, if it was not harmless, we must decide whether to exercise our discretion to correct it. *State v. Ortiz*, 372 Or 658, 671-72, 554 P3d 796 (2024).

After briefing in this case, the Supreme Court decided *State v. Shine*, 375 Or 112, 588 P3d 231 (2026).

There, over the defendant's objection, the trial court refused to read aloud the same instructions at issue in this case. *Id.* at 115. The Supreme Court explained that "ORCP 59 B requires the trial court to 'charge' the jury at the conclusion of trial by providing an oral statement of 'all matters of law necessary for its information in giving its verdict.'" *Id.* at 129 (quoting ORCP 59 B). The court, considering the defendant's claim in a preserved posture, concluded that the instructions the trial court declined to reread were matters of law necessary for the jury's information in giving its verdict, that the trial court was required to reread them aloud at the end of trial, and that it erred in not doing so. *Id.* In light of *Shine*, we conclude that the trial court's failure to reread the instructions was legal error that is obvious, not reasonably in dispute, and appears on the record.[2]

We turn to whether the error was harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (an error is harmless if there is "little likelihood" that it affected the verdict). In *Shine*, the Supreme Court held that the error in not rereading the instructions was not harmless because they were "important instructions that protect defendants' constitutional rights" and were "particularly salient" where a defendant does not testify in his own defense. 375 Or at 130. The court also noted that "timing matters," and that an instruction read at the beginning of trial will not necessarily have the same effect as when the instruction is read immediately before deliberation. *Id.* at 131. Finally, the court explained that a party's argument in closing "is not a substitute for instructions from the court." *Id.* For the same reasons as articulated in *Shine*, we cannot conclude that the error in this case was harmless.

---

[2] The state attempts to argue that the error does not qualify as plain error because defendant might have had a plausible strategic purpose for not objecting. Specifically, the state points out that defendant could have concluded that rereading the instructions was unnecessary or distracting, that other instructions were sufficient, or that counsel could utilize closing statements to read any key instructions. We reject that argument for two reasons. First, the Supreme Court has clarified that in the context of jury instructions, a defendant's strategic choice not to object goes to whether we should exercise our discretion to correct plain error, and not to whether the error constitutes plain error. *State v. Hutchings*, 375 Or 132, 144-45, 588 P3d 241 (2026); *State v. Wiltse*, 373 Or 1, 18, 559 P3d 380 (2024). Second, for the reasons explained in our decision to exercise discretion, we are not persuaded that defendant made a strategic choice not to object.

Finally, we consider whether to exercise our discretion to correct the plain error. In deciding whether to correct a plain error, we consider factors such as:

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way."

*Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991); *see Vanornum*, 354 Or at 630 (whether to exercise discretion "entails making a prudential call" after considering the *Ailes* factors).

We begin with the gravity of the error. In this case, the court's "charge to the jury here failed to communicate all of the information fundamental to the fairness of our criminal justice system." *State v. Escalante*, 350 Or App 233, 240, ___ P3d ___ (2026) (internal quotation marks omitted). The court's final oral instructions did not charge the jury with the important instructions intended to protect defendant's constitutional rights. The jury's correct understanding of those matters was critical to the outcome of the case. *State v. Vanornum*, 273 Or App 263, 269, 356 P3d 1161 (2015) ("In analyzing the gravity of an error, we consider if the issue was critical to the outcome of the case."). Indeed, we recently concluded that this same error was grave. *Escalante*, 350 Or App at 240.

The nature of the case also weighs in favor of exercising our discretion. In this case, defendant did not testify in his own defense, but rather, his defense consisted entirely of arguing that the state had failed to prove its case beyond a reasonable doubt. In that context, the trial court's failure to reinstruct the jury about defendant's rights and the state's burden of proof at the end of trial, before they began deliberation, was particularly serious. *See Shine*, 375 Or at 130 (the instructions concerning a defendant's constitutional rights are "particularly salient" where a defendant does not testify in his own defense).

Although the error could have been readily corrected had defendant objected, which weighs against exercising

our discretion, we nevertheless have found it appropriate to exercise discretion where a defendant's challenged conviction is for a serious felony. *State v. Pervish*, 202 Or App 442, 466, 123 P3d 285 (2005), *rev den*, 340 Or 308 (2006) (holding that unpreserved instructional error was plain and exercising our discretion to correct it, in part because of the seriousness of the convictions). Here, as a result of his convictions, defendant has been sentenced to life in prison. He has a compelling interest in ensuring he was not convicted of serious crimes before a jury that might not have understood the important underlying constitutional principles. That compelling interest, in these particular circumstances, carries greater weight than the judicial system's interest in avoiding an unnecessary retrial.

We acknowledge that the policies behind the general rule requiring preservation were not served. However, we reject the state's argument that defendant might have had strategic reasons for not objecting.[3] We do not perceive that defendant could plausibly have obtained any benefit by remaining silent. Although defense counsel acquiesced to the trial court's proposed procedure, the record does not suggest that defendant believed the rereading of the instructions would be unnecessary or distracting or that other instructions were sufficient.

Given the seriousness of defendant's convictions, the gravity of the error, and the nature of the case, we believe the ends of justice are best served by the exercise of our discretion to correct the plain error here. Accordingly, we do so, with the "utmost caution" and because this is a "rare and exceptional" case that requires it. *State v. Hutchings*, 375 Or 132, 149, 588 P3d 241 (2026) (internal quotation marks omitted).

Because we reverse based on defendant's first assignment of error, we need not address most of defendant's remaining assignments. However, because the issue will arise again on remand, we turn to defendant's fourth assignment of error challenging the trial court's denial of his motion to suppress

---

[3] This is the third time that this issue has been before us. This particular trial court's practice was to not reread aloud certain jury instructions at the end of trial. *State v. Shine*, 334 Or App 360, 363-64, 557 P3d 181 (2024), *aff'd*, 375 Or 112, 588 P3d 231 (2026); *Escalante*, 350 Or App at 235.

AT&T phone data. He argues that the affidavit in support of the warrant failed to establish probable cause because Rucker was the sole informant linking him to the scene of the crime and her information was unreliable because law enforcement failed to corroborate her statements. We disagree.

When considering information provided by a named informant, the informant's veracity may "be established in several ways including corroboration by the police, corroboration by another informant, the informant exposing himself to liability for filing a false report or by the informant's statements against penal interest." *State v. Pelster/Boyer*, 172 Or App 596, 604, 21 P3d 106, *rev den*, 332 Or 632 (2001).

Here, each of those factors support Rucker's reliability. She was a named informant, which "is one indication that *** her information is reliable, because a named informant is exposed to possible criminal or civil charges should the information prove false." *State v. Payne*, 150 Or App 469, 473, 946 P2d 353 (1997), *rev den*, 326 Or 390 (1998). She made a statement against penal interest when she acknowledged that she had hidden drugs in the medical facility's restroom when she took J there. *See id.* at 474 (the named informant's statement against penal interest was sufficient to establish his reliability). Rucker's identification of defendant as the shooter was corroborated by another named informant who provided information that defendant had admitted that he "fucked up" and "shot that dude." Her statement that defendant had displayed a gun during the initial confrontation at her home was corroborated by a text sent by J to a friend about 25 minutes before the shooting. Finally, police corroborated by video surveillance her statement that immediately after the shooting she had followed after defendant's car, but then turned around to check on J. *See id.* ("Police corroboration of details from an informant's statements is yet another indication of the statement's reliability."). For the foregoing reasons, the affidavit provided an adequate basis to conclude that Rucker's statements were reliable. The trial court did not err in denying defendant's motion to suppress.

In Case No. 21CR10111, reversed and remanded. In Case No. 21CR11204, remanded for resentencing; otherwise affirmed.